UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 OCT 25 P 2:44

U.S. DISTRICT COURT
DISTRICT OF MASS.

GEORGE LOGUE, )
)
Plaintiff, )
)
v. )  Civil Action No. 04-CV-10823-DPW
)
DONNA COPPOLA, )
)
Defendant )

## MOTION TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(1) and (6)[1], the defendant Donna Coppola ("Coppola") respectfully moves to dismiss the Complaint filed by the plaintiff, George Logue ("Logue"). This Court lacks subject matter jurisdiction over the claims as Coppola did not act under the color of state authority during her representation of Logue to support a claim of civil rights violations under 28 U.S.C. § 1983. In addition, the Court should dismiss the Complaint because it fails to state a claim upon which relief can be granted as Coppola was incapable of maliciously prosecuting Logue as defense counsel to him in a criminal matter. Moreover, Logue fails to allege any facts evidencing two of the four factors for a claim of intentional infliction of emotional distress: 1) that Coppola's conduct was extreme or outrageous, beyond all bounds of decency, or utterly intolerable in a civilized community, and 2) that the distress was so severe that no reasonable man could be expected to endure. Finally, Logue fails to allege facts to support a claim that Coppola is responsible for any damages, if Logue actually suffered damages.

---

[1] In addition, Logue improperly served the summons and complaint in violation of Fed.R.Civ.P. 4(e) on Coppola by having a copy delivered to her law office in Quincy. The summons and complaint were accepted by an attorney who shares office space with Coppola, but has no authority to accept service on her behalf. Coppola reserves the right to challenge service of process to the extent this Court does not dismiss the Complaint for the reasons in this motion.

## Factual Background

Coppola is an attorney licensed before the courts of the Commonwealth of Massachusetts. (Complaint, First Cause at ¶1). In 2003, Coppola maintained a contract with the City of Cambridge to accept court appointments. (Affidavit of Donna Coppola at ¶2). On March 28, 2003, Coppola was at Cambridge District Court when Logue, who was then a defendant in a criminal matter, attempted to argue a motion before the District Court after dismissing his court-appointed counsel Michele Vakili. (Complaint, First Cause at ¶¶4-5). After denying Logue's motion, the trial judge explained that Logue still had the right to a court-appointed attorney. Logue accepted, and the District Court assigned Coppola to the case. (Id., at ¶5).[2]

Logue and Coppola conferenced on March 28th, and with the court's permission, scheduled a pre-trial conference for April 21, 2003. (Id.). Coppola reminded Logue of this hearing by letter. (Affidavit, at ¶4). Logue contacted Coppola shortly before the April 21 hearing date and said that he was unable to attend the hearing and asked that Coppola reschedule the hearing. Coppola did reschedule the hearing for May. (Id., at ¶5). After discussing the matter with Logue, Coppola eventually asked the District Court to schedule a trial for June 5, 2003. (Id., at ¶6). Just before the trial date, Logue filed a motion himself to set over the trial date. (Id., at ¶ 7). The court heard the motion and denied it. Logue knew that his trial was set for June 5, yet he failed to show up. The court entered a default against Logue for his failure to attend the trial. At that point, Coppola was dismissed as court-appointed counsel. (Id., at ¶¶ 7-8). Logue removed the default and the court assigned another court-appointed attorney. Logue eventually convinced the court to dismiss the charges against him. (Complaint, First Cause at ¶6).

---

[2] By all accounts, Logue is homeless. Logue provided Coppola with a mailing address and telephone numbers at the Northeastern University library and the library at the federal court house, where Logue said he could receive messages. The mailing address was for General Delivery at a U.S. Post Office. Logue's lack of direct phone access made communicating with him extremely difficult.

2

became the plaintiff's attorney and other than the source of payment, their relationship became identical to that between any other attorney and client. *Id.*

Under our legal system, the duties of a defense lawyer are that of personal counselor and advocate. Despite the fact that an attorney may still be considered an "officer of the court," "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Id.* 454 U.S. at 516, 102 S.Ct. at 450. The system posits that a defense lawyer best serves the interest of the public and justice by advancing the undivided interests of his client, and not acting on behalf of the state or in concert with it. *Id.*

In Dodson, the Supreme Court held that the defendant's employment status was insufficient to deem a public defender as acting under color of state law. In Dodson, the public defender was a full-time county employee, subject to supervision and administrative direction by the county. No such full-time status exists here. Coppola was an independent contractor with the City of Cambridge, receiving only a paycheck for the representations taken on. Coppola was in no way subject to supervision by Cambridge, creating even less reason for a court to determine she acted on behalf of the municipality.

The Supreme Court held there were certain functions in which a public defender could act under color of state law, but that those instances did not include performance of traditional attorney functions. *Id.* 454 U.S. at 520, 102 S.Ct. at 453.

II.     The Court Has the Power to Dismiss This Case Sua Sponte

This case was filed pursuant to 28 U.S.C. § 1915(d) as Logue filed for leave to proceed *in forma pauperis* ("IFP"), a motion granted by this Court on April 30, 2004. Under § 1915(d), courts may dismiss IFP complaints *sua sponte* if the plaintiff's legal claim is based on an indisputably meritless legal theory or on factual allegations that are clearly baseless. Pigott v.

4

Lynn Police Dept., 1993 U.S. App. LEXIS 24692, *12 (1st cir. Sept. 27, 1993) citing Denton v. Hernandez, 504 U.S. 24, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As described above, Logue's claim under § 1983 is legally meritless, as he cannot proceed for civil rights violations against his court-appointed defense counsel for the performance of typical attorney functions. Thus, this Court has the power and right to dismiss the civil rights claims against Coppola. It must do so in the interests of justice.

III.     Logue's Complaint Fails To State Claims On Which Relief Can Be Granted

To the extent this Court does not dismiss Logue's claim for lack of subject matter jurisdiction, it must dismiss all three counts on the basis that Logue's complaint fails to state grounds upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). In adjudicating motions to dismiss under Fed.R.Civ.P. 12 (b) (6), the Court must accept all allegations in the Complaint as true and all reasonable inferences must be drawn in favor of the plaintiffs. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994). The Complaint should be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). That general proposition notwithstanding, "bald assertions,...subjective characterizations, optimistic predictions, or problematic suppositions" need not be credited. U.S. v. AVX Corp., 962 F.2d 108, 115 (1 Cir., 1992).

Here, the allegations in the Complaint do not support claims of malicious prosecution or intentional infliction of emotional distress. Accordingly, the Court should dismiss Logue's claims for malicious prosecution and intentional infliction of emotional distress.

5

### a.   Logue cannot make out a case for malicious prosecution against court-appointed defense counsel.

In what Logue refers to as "Second Cause" in his complaint, he claims that Coppola assisted in maliciously prosecuting him. Logue alleges that Coppola acted to continue the criminal case against him. (Complaint, Second Cause at ¶2). Logue's complaint alleges that the purpose of Coppola's actions was done to continue the criminal process against him (Complaint, Second Cause at ¶ 3). Logue's count for malicious prosecution fails.

A claim for malicious prosecution has three factors: 1) initiation of criminal proceedings against the plaintiff with malice, 2) without probable cause, and 3) the proceedings were terminated in the plaintiff's favor. Beecy v. Pucciarelli, 387 Mass. 589, 593-95 (1982). Coppola does not dispute that criminal proceedings were initiated against Logue, or that the charges were ultimately decided in his favor.[5] Logue never alleges, as he cannot, that Coppola was responsible for instituting those charges. As set forth in the Complaint, Coppola did not come into contact with Logue until March 28, 2003, more than four months after his arrest. (Complaint, First Cause at ¶ 4-5). The City of Cambridge officially brought charges against Logue in December 2002. Coppola is not liable for the initiation of prosecution against Logue. Logue's only argument, therefore, is that Coppola is liable for continuation of the prosecution. As Logue's court-appointed attorney, however, Coppola did nothing in concert with the City of Cambridge to needlessly continue the criminal proceedings.

Logue's complaint cites to a case of this Court for support that a person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by another is subject to the same liability as if he had initiated the proceedings. Mitchell v. City of Boston, 160 F.Supp.2d 201, 215 (D.Mass. 1997). In addition to the fact that the court in Mitchell

---

[5] For the purposes of this motion, Coppola does not take issue with whether the City of Cambridge initiated charges against Logue in good faith.

6

did not find any liability, the facts are easily distinguishable from the current matter. In Mitchell, a former criminal defendant brought suit against two police officers who aided in gathering facts against the plaintiff and allegedly contacted the district attorney with new, and possibly false, evidence not made part of the original police report, in order to make sure the plaintiff went to jail. The court found that officer's conduct did not amount to continuing the criminal proceedings initiated by another. *Id.*

In the Complaint, Logue does allege any fact to show Coppola aided in continuing the prosecution against him. Logue claims merely that the April 21, 2003 pre-trial hearing needed to be rescheduled. (Complaint, First Cause at ¶ 5). Such rescheduling is common in the legal system as attorneys or clients often have valid reasons for rescheduling hearings. In this case, Logue was unable to attend the pre-trial conference, the reason for rescheduling. Thus, Coppola rescheduled the pre-trial conference to a date when Logue could attend. The fact that Logue's pre-trial conference was pushed back for a short time does not demonstrate that Coppola was party to some conspiracy to continue the prosecution against him. Even Logue's bare allegation as to Coppola's motivation is insufficient absent the allegation of facts to prove that Coppola acted specifically to prolong his criminal prosecution. *See* Pigott, 1993 U.S. App. LEXIS at *19-20 (complaint dismissed where it contained "only the most conclusory allegations of conspiracy"). No facts are alleged in the complaint to tie Vakili to either a conspiracy or some other private motivation for continuing Logue's prosecution. Delay in the court's trial schedule is a part of the legal process. No attorney can guarantee that just because the court at some point sets down a date for a hearing or a trial, that the event will occur on that date. This Court must not sanction legal proceedings against a court-appointed defense counsel simply because a hearing did not occur exactly on the date the plaintiff desired.

Logue's complaint fails to provide a set of facts on which this Court could conclude that Coppola aided in either the initiation of criminal proceedings or for the continuation of proceedings brought without probable case.

### b. Logue fails to allege two factors in his claim for intentional infliction of emotional distress.

Logue's Third Cause alleges that Coppola intentionally inflicted emotional distress against Logue. The Complaint, however, fails to allege facts to support two key elements of the claim, requiring this Court to dismiss the count.

A claim for intentional infliction of emotional distress has four elements: 1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of her conduct; 2) the defendant's conduct was "extreme and outrageous," "beyond all bounds of decency," and was "utterly intolerable in a civilized community"; 3) the defendant's actions caused distress to the plaintiff; and 4) the emotional distress was severe and of a nature "that no reasonable man could be expected to endure it." Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).

To make a valid claim for intentional infliction of emotional distress, the actor's conduct must be more than "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" nor even is it enough 'that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466, 681 N.E.2d 1189, 1197 (1997) (citations omitted). Logue's Complaint fails to allege conduct that is extreme and outrageous, beyond all bounds of decency, and utterly intolerable in a civilized community, as well as failing to allege reasonable facts that the emotional distress

8

was severe and of a nature that no reasonable man could be expected to endure it. Although the standard of sufficiency in Massachusetts is fairly liberal, there certainly exists a threshold level which a claimant must reach in order to plead extreme and outrageous conduct. Boyle v. Wenk, 378 Mass. 592, 595, (1979).

Logue alleges three facts for his claim of intentional infliction. He alleges that: Coppola failed to move for dismissal at the April 21 pre-trial hearing (Complaint, Third Cause at ¶ 5), that he found it impossible to contact Coppola and she refused to return his calls (Id.), and that Coppola failed to attend the June 3, 2003 trial date (Id.). Even in combination, these facts do not amount to extreme or outrageous conduct. In response to Logue's allegation that Coppola did not move to dismiss the charges against him at the April 21, 2003, pre-trial conference, Logue had already moved to dismiss the charges against him twice, and the court denied Logue's motion both times. Logue was not able to attend the pre-trial conference. His inability to attend would have been detrimental to any motion to dismiss as Logue was a key fact witness. Logue, in fact, informed Coppola ahead of time that he could not attend as asked that she reschedule the hearing. Coppola reasonably rescheduled to a date when Logue would be available. Logue's claim that Coppola did not return his phone calls is implausible. As stated earlier, the only telephone he provided Coppola were libraries at Northeastern University and the federal courthouse. As Logue worked at neither location, it is not unreasonable that any message left for him was not received. It is also reasonable that Logue might not get a message very quickly. If Logue called, and did not reach Vakili directly, she had no means of calling him back without Logue's leaving a phone number, which he never did. Additionally, Logue's only mailing address was General Delivery at a U.S. Post Office. If he did not show up to a post office regularly, he might not get Coppola's correspondence. It is not extreme or outrageous that

9

Coppola was unable to contact Logue immediately when his own whereabouts were unclear. Logue's last point, that Coppola failed to appear on June 3, 2003, for trial, is completely mistaken. The court scheduled a trial for June 5, 2003. Immediately before trial, Logue filed a motion to continue the trial, which the court denied. Logue failed to show up on June 5, resulting in a default against him. Logue's mistake about the date does not translate into any sort of extreme or outrageous conduct by the defendant.

Even if the Court concludes Coppola's conduct was extreme or outrageous, Logue fails to allege that the conduct was severe and of a nature that no reasonable person could be expected to endure. Logue himself admits that he did endure the conduct, and the charges against him were dismissed. Despite the fact that Coppola did not file or argue a motion to dismiss on April 11, Logue admits that he had already filed his own motion, which the court denied.[6] (Complaint, Third Cause at ¶ 5). Despite the fact the court entered a default against Logue for his failure to attend trial on June 5, 2003, Logue successfully removed the default and proceeded with his case (Id.). Despite the fact that Coppola was unable to return Logue's phone messages, there was little delay in moving Logue's case, hardly the kind of thing so severe that no reasonable person could be expected to endure. This might be different if Logue was in jail awaiting trial. He was, however, not jailed during his case. Ultimately, Logue states that the charges against him were dismissed, meaning that he successfully managed his case after he removed Coppola as counsel. The inability to conference with his attorney as often as Logue would have liked did not inhibit him from convincing the court to dismiss the charges against him.

---

[6] Logue states in paragraph 5 of his Third Cause in a complaint filed against Michele Vakili, Logue's first court-appointed counsel, the he filed a motion to dismiss on his own. The Court may take judicial notice of this complaint, in docket no.04-CV-10824-DPW, as a public record without converting this motion to one for summary judgment.

As Logue is unable to allege viable facts evidencing extreme or outrageous conduct, or that the conduct was so severe that no reasonable person could be expected to endure it, the Court must dismiss his claim for intentional infliction of emotional distress.

For all of the above-mentioned reasons, this Court must dismiss the Complaint due to a lack of subject matter jurisdiction. If the Court finds there is subject matter jurisdiction, it must dismiss the counts for malicious prosecution and intentional infliction of emotional distress due to the failure to state a claim on which relief can be granted.

### REQUEST FOR ORAL ARGUMENT

Coppola respectfully requests a hearing on her motion to dismiss.

Respectfully submitted,
Donna Coppola

By her attorneys,

David Hatem, BBO #225700
Nancy M. Reimer, BBO #555373
Douglas M. Marrano, BBO #644030
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210
617-406-4500

Dated: October 25, 2004

11

## Certificate of Service

I, Douglas Marrano, hereby certify that on this 25th day of October, 2004, I have given notice of the above Motion to Dismiss of the defendant, Donna Coppola, by mailing a copy thereof, certified mail, return-receipt requested, to George Logue, General Delivery, Boston, MA 02205.

_____
Douglas Marrano

00871242